**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| JEANETTE HERNANDEZ-GUILLEAUME, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action: 3:24-cv-77 |
| | § | |
| EQUIFAX INFORMATION SERVICES LLC, | § | With Jury Demand Endorsed |
| EXPERIAN INFORMATION SOLUTIONS, | § | |
| Inc., and CALIBER HOME LOANS, Inc., | § | |
| | § | |
| Defendants. | § | |
| | § | |

## <u>COMPLAINT</u>

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

Plaintiff, Jeanette Hernandez-Guilleaume ("Plaintiff"), by and through counsel, for her Complaint against Defendants, Equifax Information Services LLC, Experian Information Solutions, Inc., and Caliber Home Loans, Inc., jointly, severally, and in solido, states as follows:

### I.  INTRODUCTION

1.      Two of the Defendants are consumer reporting agencies ("CRAs) as defined by 15 U.S.C. § 1681a(f), and Defendant, Caliber Home Loans, Inc. is a furnisher of consumer information. All Defendants have violated 15 U.S.C. § 1681 *et seq.*, known as the Fair Credit Reporting Act (the "FCRA"). Plaintiff seeks to recover from Defendants actual, statutory, and punitive damages, injunctive relief, legal fees, and expenses.

## II.  PARTIES

2.      Plaintiff, Jeanette Hernandez-Guilleaume, is a natural person residing in Stafford County, Virginia, is a "consumer," as defined by the FCRA, 15 U.S.C. § 1681a(c), and is a victim of repeated false credit reporting.

**Made Defendants herein are**:

3.      Upon information and belief, Defendant Equifax Information Services LLC, which may also hereinafter be referred to as "Equifax," "Defendant," "Defendants," "CRA," "CRA Defendant," or "CRA Defendants" is a Georgia limited liability company that does substantial business in this judicial district and may be served by delivering a summons to its headquarters, 1550 Peachtree Street, Northwest, Atlanta, Georgia 30309.  Equifax is a nationwide consumer reporting agency ("CRA") as defined by 15 U.S.C. § 1681a(f). Equifax regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purposes of furnishing "consumer reports" as defined by 15 U.S.C. § 1681a(f) to third parties. Equifax disburses such consumer reports to third parties of contract for monetary compensation.

4.      Upon information and belief, Defendant Experian Information Solutions, Inc., which may also hereinafter be referred to as "Experian", "Defendant," "Defendants," "CRA," or "CRA Defendant," or "CRA Defendants," is an Ohio corporation that does business in this judicial district and may be served by delivering a summons to its headquarters, 475 Anton Blvd., Costa Mesa, California 92626. Experian is a nationwide CRA as defined by 15 U.S.C. § 1681a(f). Experian regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purposes of furnishing "consumer reports" as defined by 15 U.S.C. § 1681a(f) to

third parties. Experian disburses such consumer reports to third parties of contract for monetary compensation.

5.      Upon information and belief, Defendant Caliber Home Loans, Inc. which may also hereinafter be referred to as "Caliber," "Defendant," "Defendants," "Furnisher Defendant," or "Furnisher Defendants," is a Delaware corporation that does substantial business in this judicial district and may be served by delivering a summons to its Legal Department at its headquarters, 1525 South Belt Line Road, Coppell, Texas 75019. Caliber is a "person," as defined by the FCRA, 15 U.S.C. § 1681a(b), and a furnisher of consumer credit information to consumer reporting agencies.

6.      As used herein, "consumer reporting agency," or "CRA," means any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports (commonly referred to as "credit reports") to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports and is an entity in the business of collecting, maintaining and disseminating information regarding the credit-worthiness of individuals. CRAs specifically include, but are not limited to, Equifax and Experian.

### III.  JURISDICTION AND VENUE

7.      Plaintiff respectfully asserts that this Honorable Court has jurisdiction in this case arises under federal law. 28 U.S.C. § 1331, 1334, and 1367 and 15 U.S.C. § 1681(p). Plaintiff also asserts actions under states' laws which may be brought within the supplemental jurisdiction of this

Court and Plaintiff respectfully requests that this Honorable Court exercise supplemental jurisdiction over said claims. 28 U.S.C. § 1367.

8.    Venue is proper in this District, because CRA Defendants and Caliber transact business in this District. Caliber's headquarters is located in this judicial district, a substantial part of the conduct complained of occurred in this district, and various actions made basis of Plaintiff's claims against Defendants occurred in the Northern District of Texas as further described. 28 U.S.C. § 1391.

9.    Venue is further proper in this District, because CRA Defendants entered into agreements with Caliber in this judicial district to receive credit reporting data concerning Plaintiff. Any and all requests to investigate Plaintiff's dispute sent from the CRA Defendants as part of their reinvestigation was submitted to Caliber's headquarters and investigated by the furnisher Caliber using Caliber's resources located at or closely connected to this judicial district. Caliber managed Plaintiff's mortgage from this judicial district including communicating amounts owed and conducting numerous communications via phone and letter.

## IV.  FACTUAL ALLEGATIONS

10.    Upon information and belief, in or around December 2016 Plaintiff secured a mortgage for her primary residence.

11.    Sometime thereafter, Caliber acquired Plaintiff's mortgage loan for her property and assigned loan number 970323**** (hereinafter, "Caliber mortgage account").

12.    Sometime after December 2016, a mortgage loan servicer, Freedom Mortgage,

acquired Plaintiff's mortgage loan for her property and assigned loan number 6195****, (hereinafter, "Freedom mortgage account").

13.　　On March 7, 2018, Plaintiff filed for a Chapter 13 bankruptcy. A redacted copy of the Docket Summary for Case No. 18-10786-KHK is attached hereto as Exhibit "A" and incorporated by reference herein.

14.　　On April 13, 2023, Plaintiff received a discharge from bankruptcy and excepted from discharge Plaintiff's residential home mortgage. A redacted copy of the Final Discharge Order is attached hereto as Exhibit "B" and incorporated by reference herein.

15.　　Read in concert, Sections 1322(a)(2), 1322(b)(5), and 1328(a)(1) of the Bankruptcy Code, bar discharging home mortgage debts in a chapter 13 bankruptcy.

16.　　Throughout Plaintiff's chapter 13 bankruptcy, under direct or indirect order from the bankruptcy, timely monthly mortgage payments were made to the Caliber/Freedom mortgage account(s)

17.　　Sometime in September 2023, Plaintiff obtained her three-bureau credit report and noticed that the Equifax, Experian, and Trans Union credit report(s) were not accurate. A redacted copy of Plaintiff's three-bureau credit report is attached hereto as Exhibit "C" and incorporated by reference herein.

18.　　Within the Equifax credit report, Plaintiff noticed that it reported the Caliber mortgage account as having late payments reporting for April 2019, and then from July 2019 through January 2020, which was in the middle of her bankruptcy. *See* Exhibit "C".

19.　　Within the Equifax credit report, Plaintiff also noticed that it reported the Freedom mortgage account as having an account status "derogatory" and reported within the creditor remarks

section references to Plaintiff's chapter 13 bankruptcy, despite the Plaintiff having been discharged from chapter 13 bankruptcy, still residing in the home, and making payments on the property. *See* Exhibit "C".

20.     Equifax's reporting of the Caliber and Freedom mortgage accounts was incorrect because Plaintiff completed the required payments through Plaintiff's chapter 13 bankruptcy, was successfully discharged, and excepted her residential home mortgage debt from being discharged, and was timely on all mortgage payment; therefore, any remarks and/or references to a chapter 13 bankruptcy, or late payments during the bankruptcy, should have been removed or omitted from the Caliber and/or Freedom mortgage accounts once the chapter 13 bankruptcy was discharged.[1]

21.     Metro 2 guidelines require furnishers and/or credit reporting agencies to update the reporting of an account when the borrower associated to the account filed chapter 13 bankruptcy by first updating the Consumer Information Indicator ("CII") to "D", and then continuing to furnish the monthly payment history information with a value of "D". Once a consumer is discharged, Metro 2 reporting standards specifically instruct furnishers and/or consumer reporting agencies to remove any referencing to a chapter 13 bankruptcy and suppression codes associated with bankruptcy reporting by submitting a CII code of "Q". In following these simple Metro 2 guidelines, which are well regarded as the industry standards, it prevents the reporting of any late payment history during the pendency of a consumer's chapter 13 bankruptcy, and then continued reporting once a consumer is discharged.

_____

[1] The Consumer Data Industry Association's Metro 2 reporting standards specifically instruct consumer reporting agencies to remove any bankruptcy references or suppression codes associated with bankruptcy reporting so that ongoing payments made by the consumer can be reported.

22.     Metro 2 guidelines have been adopted by Equifax as the industry standards, and these industry standards are followed by both furnishers and Equifax.

23.     Within the Experian credit report Plaintiff noticed that it reported the Caliber mortgage account as having late payments reporting for April 2019, and then from July 2019 through January 2020, which was in the middle of her bankruptcy. *See* Exhibit "C".

24.     Within the Experian credit report, Plaintiff also noticed that it reported the Freedom mortgage account as having an account status "derogatory" and reported within the creditor remarks section references to Plaintiff's chapter 13 bankruptcy, despite the Plaintiff having been discharged from chapter 13 bankruptcy, still residing in the home, and making payments on the property. *See* Exhibit "C".

25.     Experian's reporting of the Caliber and Freedom mortgage accounts was incorrect because Plaintiff completed the required payments through Plaintiff's chapter 13 bankruptcy, was successfully discharged, and excepted her residential home mortgage debt from being discharged, and was timely on all mortgage payment; therefore, any remarks and/or references to a chapter 13 bankruptcy, or late payments during the bankruptcy, should have been removed or omitted from the Caliber and/or Freedom mortgage accounts once the chapter 13 bankruptcy was discharged.[2]

26.     Metro 2 guidelines require furnishers and/or credit reporting agencies to update the reporting of an account when the borrower associated to the account filed chapter 13 bankruptcy by first updating the Consumer Information Indicator ("CII") to "D", and then continuing to furnish

---

[2] The Consumer Data Industry Association's Metro 2 reporting standards specifically instruct consumer reporting agencies to remove any bankruptcy references or suppression codes associated with bankruptcy reporting so that ongoing payments made by the consumer can be reported.

the monthly payment history information with a value of "D". Once a consumer is discharged, Metro 2 reporting standards specifically instruct furnishers and/or consumer reporting agencies to remove any referencing to a chapter 13 bankruptcy and suppression codes associated with bankruptcy reporting by submitting a CII code of "Q". In following these simple Metro 2 guidelines, which are well regarded as the industry standards, it prevents the reporting of any late payment history during the pendency of a consumer's chapter 13 bankruptcy, and then continued reporting once a consumer is discharged.

27.    Metro 2 guidelines have been adopted by Experian as the industry standards, and these industry standards are followed by both furnishers and Experian.

28.    On or about October 11, 2023, Plaintiff sent direct disputes to Equifax and Experian, and requested that the CRA Defendants investigate the reporting of the Caliber mortgage account and the Freedom mortgage account. Plaintiff requested that under the FCRA, each CRA Defendant conduct a reasonable investigation and/or remedy the inaccuracies on Plaintiff's credit reports concerning the Caliber and Freedom mortgage accounts. Redacted copies of Plaintiff's unsigned dispute letters sent to Equifax and Experian are each attached hereto as Exhibits "D" and "E" and are respectively incorporated by reference herein.

29.    Equifax responded on November 8, 2023, and concerning the Caliber mortgage account stated, "THIS CREDITOR HAS VERIFIED TO OUR COMPANY THAT THE CURRENT STATUS IS BEING REPORTED CORRECTLY." A redacted copy of Equifax's Response is attached hereto as Exhibit "F" and incorporated by reference herein.

30.    Equifax's response concerning the Freedom mortgage account stated, THIS ACCOUNT IS CURRENTLY REPORIING INCLUDED IN BANKRUPTCY".

31.    Equifax's response was not the result of a reasonable investigation into Plaintiff's dispute and failed to remedy the inaccuracies within the Caliber and Freedom mortgage accounts because Equifax failed to update both the Caliber and Freedom mortgage accounts after the chapter 13 bankruptcy was discharged and continued to report either late payments during the bankruptcy or references to the chapter 13 bankruptcy on Plaintiff's mortgage accounts.

32.    Equifax's response, or lack thereof, was not the result of a reasonable investigation into Plaintiff's dispute and failed to remedy the inaccuracies within the Caliber and Freedom mortgage accounts and gave no explanation as to why the mortgage accounts were still reporting inaccurately.

33.    Plaintiff's inaccurate Equifax consumer report was disseminated to third parties before and/or after the instant dispute.

34.    Equifax chose to "verify" false information from an unreliable source, failed to correct the inaccurate information, and continued to publish the inaccurate information regarding Plaintiff's mortgage accounts.

35.    Upon the Plaintiff's request to Equifax for verification and correction regarding the Caliber and Freedom mortgage accounts, and in accordance with Equifax's standard procedures, Equifax did not evaluate or consider any of Plaintiff's information, claims or evidence, and did not make any attempt to verify the reporting of the Caliber and Freedom mortgage accounts substantially or reasonably.

36.    Equifax has adopted the Metro 2 reporting standard, Equifax deviated from the standard based on its conduct in this case, and by Equifax deviating from the adopted standard, Equifax injured Plaintiff's credit standing.

37.     In the alternative, Equifax failed to contact furnisher Caliber and/or Freedom Mortgage, therefore, failed to perform any investigation at all.

38.     In the alternative to the allegation that Equifax failed to contact furnisher Caliber, it is alleged that Equifax did forward some notice of the dispute to Caliber, and Caliber failed to conduct a lawful investigation.

39.     Experian responded to Plaintiff's dispute on November 8, 2023.

40.     A redacted copy of Experian's response is attached hereto as Exhibit "G" and incorporated herein by reference.

41.     Within Experian's response concerning the Caliber mortgage account it stated, "The company that reported the information has certified to Experian that the information is accurate. This item was not changed as a result of our processing of your dispute."

42.     Based on Experian's response to Plaintiff's dispute, it appears that Experian only made none of the substantive changes Plaintiff requested in the direct dispute to Experian, failed to update the Caliber mortgage account after the chapter 13 bankruptcy was discharged, and continued to report either late payments during the bankruptcy or references to the chapter 13 bankruptcy on Plaintiff's Caliber mortgage account.

43.     Within Experian's response concerning the Freedom mortgage account it stated, "The item you disputed has been updated, which may include an update to the disputed information… Transferred to another lender".

44.     Based on Experian's response to Plaintiff's dispute, it appears that Experian only added that the Freedom mortgage account was transferred to another lender, made none of the substantive changes Plaintiff requested in the direct dispute to Experian, failed to update the

Freedom mortgage account after the chapter 13 bankruptcy was discharged, and continued to report references to the chapter 13 bankruptcy on Plaintiff's Freedom mortgage account.

45.    Experian's response, or lack thereof, was not the result of a reasonable investigation into Plaintiff's dispute and failed to remedy the inaccuracies within the Caliber and Freedom mortgage accounts and gave no explanation as to why the Caliber and Freedom mortgage accounts were still reporting inaccurately.

46.    Plaintiff's inaccurate Experian consumer report was disseminated to third parties before and/or after the instant dispute.

47.    Experian chose to "verify" false information from an unreliable source, failed to correct the inaccurate information, and continued to publish the inaccurate information regarding Plaintiff's Caliber and Freedom mortgage accounts.

48.    Upon the Plaintiff's request to Experian for verification and correction regarding the Caliber and Freedom mortgage accounts, and in accordance with Experian's standard procedures, Experian did not evaluate or consider any of Plaintiff's information, claims or evidence, and did not make any attempt to substantially or reasonably verify the reporting of the Caliber and Freedom mortgage accounts.

49.    Experian has adopted the Metro 2 reporting standard, Experian deviated from the standard based on its conduct in this case, and by Experian deviating from the adopted standard, Experian injured Plaintiff's credit standing.

50.    In the alternative, Experian failed to contact furnisher Caliber and/or Freedom Mortgage, therefore, failed to perform any investigation at all.

51.    In the alternative to the allegation that Experian failed to contact furnisher Caliber,

it is alleged that Experian did forward some notice of the dispute to Caliber, and Caliber failed to conduct a lawful investigation.

## V.  GROUNDS FOR RELIEF

### COUNT I – EQUIFAX'S VIOLATION OF THE FCRA
### (15 U.S.C. § 1681e(b))

52.    The Plaintiff realleges and incorporates all paragraphs above as if fully set out herein.

53.    Equifax violated 15 U.S.C. § 168le(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning the Plaintiff.

54.    The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible **accuracy** of the information concerning the individual about whom the report relates." 15 U.S.C. § 168le(b) (emphasis added).

55.    Equifax knew or should have known Plaintiff's account status in relation to her bankruptcy was inaccurate, but Equifax continued to prepare a patently false consumer report concerning Plaintiff.

56.    Despite actual and implied knowledge that Plaintiff's credit report was and is not accurate, Equifax readily provided false reports to one or more third parties, thereby misrepresenting Plaintiff, and ultimately Plaintiff's creditworthiness.

57.    After Equifax knew or should have known Plaintiff's account status in relation to her bankruptcy was inaccurate, they failed to make the corrections as would be required to attain "maximum possible accuracy of the information concerning the individual about whom the report

relates." 15 U.S.C. § 168le(b).

58.     As a result of Equifax's conduct, action, and inaction, Plaintiff suffered damages, including, but not limited to, loss in Plaintiff's ability to finance goods, loss of credit, loss of the ability to purchase and benefit from credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of potential and/or actual credit denials.

59.     Equifax's conduct, action, and inaction, were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 168ln. In the alternative, such conduct, action, and inaction, were negligent, entitling the Plaintiff to recover under 15 U.S.C. § 1681o.

60.     The Plaintiff is entitled to recover costs and attorney's fees from Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.

## COUNT II – EQUIFAX'S VIOLATION OF THE FCRA
### (15 U.S.C. §1681i)

61.     The Plaintiff realleges and incorporates all paragraphs above as if fully set out herein.

62.     Equifax violated 1681i by failing to update inaccurate information in the Plaintiff's credit file after receiving actual notice of such inaccuracies, failing to conduct a lawful reinvestigation, failing to forward all relevant information to furnisher(s), failing to maintain reasonable procedures with which to filter and verify disputed information in the Plaintiff's credit file, and relying upon verification from a source it has reason to know is unreliable.

63.     As a result of Equifax's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to, denial in attempts to refinance, loss in ability to finance goods, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

64.      Equifax's conduct, action, and inaction, were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, such conduct, action, and inaction were negligent entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

65.      The Plaintiff is entitled to recover costs and attorney's fees from Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.

### COUNT III – EXPERIAN'S VIOLATION OF THE FCRA
### (15 U.S.C. § 1681e(b))

66.      The Plaintiff realleges and incorporates all paragraphs above as if fully set out herein.

67.      Experian violated 15 U.S.C. § 168le(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning the Plaintiff.

68.      The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible **accuracy** of the information concerning the individual about whom the report relates." 15 U.S.C. § 168le(b) (emphasis added).

69.      Experian knew or should have known of Plaintiff's account status in relation to her bankruptcy was inaccurate, but Experian continued to prepare a patently false consumer report concerning Plaintiff.

70.      Despite actual and implied knowledge that Plaintiff's credit report was and is not accurate, Experian readily provided false reports to one or more third parties, thereby

misrepresenting Plaintiff, and ultimately Plaintiff's creditworthiness.

71.    After Experian knew or should have known Plaintiff's account status in relation to her bankruptcy was inaccurate, they failed to make the corrections as would be required to attain "maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 168le(b).

72.    As a result of Experian's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to, denial in attempts to refinance, loss in ability to finance goods, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

73.    Experian's conduct, action, and inaction, were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 168ln. In the alternative, such conduct, action, and inaction, were negligent, entitling the Plaintiff to recover under 15 U.S.C. § 1681o.

74.    The Plaintiff is entitled to recover costs and attorney's fees from Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.

### COUNT IV – EXPERIAN'S VIOLATION OF THE FCRA
### (15 U.S.C. §1681i)

75.    The Plaintiff realleges and incorporates all paragraphs above as if fully set out herein.

76.    Experian violated 15 U.S.C. § 168li on multiple occasions by failing to update or delete inaccurate information in the Plaintiff's credit file after receiving actual notice of such inaccuracies, failing to conduct a lawful reinvestigation, failing to forward all relevant information

to the furnisher(s), failing to maintain reasonable procedures with which to filter and verify disputed information in the Plaintiff's credit file, and relying upon verification from a source it has reason to know is unreliable.

77.    As a result of Experian's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to, denial in attempts to refinance, loss in ability to finance goods, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

78.    Experian's conduct, action, and inaction, were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, such conduct, action, and inaction were negligent entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

79.    The Plaintiff is entitled to recover costs and attorney's fees from Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.

### COUNT VII – CALIBER'S VIOLATION OF THE FCRA
### (15 U.S.C. §1681s-2(b))

80.    Defendant Caliber violated 15 U.S.C. § 1681s-2(b) by failing to conduct reasonable investigations upon receiving notice of Plaintiff's dispute(s) from one or more consumer reporting agencies, and/or failing to appropriately report the results of their investigations, and/or failing to appropriately modify the information.

81.    Caliber further violated 15 U.S.C. § 1681s-2(b) by continuing to report the Caliber representation within Plaintiff's credit file with the CRA Defendants without also including a notation that this debt was disputed, failing to fully and properly investigate the Plaintiff's dispute

of the Caliber representation, failing to accurately respond to the CRA Defendants, failing to correctly report results of an accurate investigation to every other consumer reporting agency, and failing to permanently and lawfully correct its own internal records to prevent the re-reporting of the Caliber representations to the consumer reporting agencies.

82.    As a result of Caliber's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to, denial in attempts to refinance, loss in ability to finance goods, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

83.    Caliber's conduct, action, and inaction, were willful, rendering it liable for actual or statutory, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

## VI.  VICARIOUS LIABILITY/RESPONDEAT SUPERIOR

84.    Plaintiff will be able to show, after reasonable discovery, that all actions at issue were taken by employees, agents, servants, or representatives, of any type, for Defendants, the principals, within the line and scope of such individuals' (or entities') express or implied authority, through employment, agency, or representation, which imputes liability to Defendants for all such actions under the doctrine of respondeat superior and/or vicarious liability.

## VII. DAMAGES

85.    Plaintiff respectfully requests that this Honorable Court instruct the jury, as the trier

of facts, that in addition to actual or compensatory damages, punitive or exemplary damages may be awarded against the Defendants under the provisions of the FCRA and/or states' laws, including Texas.

86.     Plaintiff respectfully requests that this Honorable Court award Plaintiff her litigation expenses and other costs of litigation and reasonable attorney's fees incurred in this litigation, in accordance with the provisions of the FCRA and/or other laws.

87.     The above and foregoing actions, inactions, and fault of Defendants, as to each and every claim, have proximately caused a wide variety of damages to Plaintiff.

88.     Defendants performed perfunctory and essentially useless reinvestigations resulting in the verification of false reportings about the Plaintiff and have been a substantial factor in causing credit denials and other damages.

89.     Plaintiff suffered a variety of damages, including economic and non-economic damages as prayed for herein.

90.     Defendants have negligently and/or willfully violated various provisions of the FCRA and are thereby liable unto Plaintiff.

91.     Defendants are liable unto Plaintiff for all actual, statutory, exemplary and punitive damages awarded in this case, as well as other demands and claims asserted herein including, but not limited to, out-of-pocket expenses, denial in her attempt to refinance her mortgage, credit denials, costs and time of repairing her credit, pain and suffering, embarrassment, inconvenience, lost economic opportunity, loss of incidental time, frustration, emotional distress, mental anguish, fear of personal and financial safety and security, attorney's fees, and court costs, and other assessments proper by law and any and all other applicable federal and state laws, together with

legal interest thereon from date of judicial demand until paid.

**WHEREFORE PREMESIS CONSIDERED**, Plaintiff prays that this Honorable Court:

A.      Enter Judgment in favor of Plaintiff and against Defendants Equifax Information Services LLC, Experian Information Solutions, Inc., and Caliber Home Loans, Inc., jointly, severally, and in solido, for all reasonable damages sustained by Plaintiff, including, but not limited to, actual damages, compensatory damages, out-of-pocket expenses, credit denials, costs and time of repairing her credit, pain and suffering, embarrassment, inconvenience, lost economic opportunity, loss of incidental time, frustration, emotional distress, mental anguish, and fear of personal and financial safety and security for Defendants' violations of the FCRA, applicable state law, and common law;

B.      Find that the appropriate circumstances exist for an award of punitive damages to Plaintiff;

C.      Award Plaintiff pre-judgment and post-judgment interest, as allowed by law;

D.      Order that the CRA Defendants, Equifax Information Services LLC and Experian Information Solutions, Inc., and Furnisher Defendant, Caliber Home Loans, Inc., work in conjunction, cooperatively, and/or individually to reinvestigate and correct the consumer report(s), credit report(s), data emanations, consumer histories, and credit histories of and concerning Plaintiff and/or any of Plaintiff's personal identifiers.

E.      Grant such other and further relief, in law or equity, to which Plaintiff might show she is justly entitled.

Date Filed: <u>January 10, 2024</u>

Respectfully submitted,

<u>/s/ Blake R. Bauer</u>
Blake R. Bauer
MN Bar Number 0396262
FCRA-TX@fieldslaw.com
FIELDS LAW FIRM
9999 Wayzata Blvd.
Minnetonka, Minnesota 55305
(612) 206-3489 (telephone)
(612) 370-4256 (fax)


<u>/s/ Jonathan A. Heeps</u>
Jonathan A. Heeps
State Bar No. 24074387
Post Office Box 174372
Arlington, Texas 76003
Telephone (682) 738-6415
Fax (844) 738-6416
jaheeps@heepslaw.com


COUNSEL FOR PLAINTIFF

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

Date: January 10, 2024                    /s/ Blake R. Bauer
                                          Blake R. Bauer